**Smith V. RANSOM, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–1287
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1983.

---

John G. Heike, Dallas, Tex., for plaintiff-appellant.

Martha Joe Stroud, Asst. U.S. Atty., W. Emmitt Roberts, Atty., Health and Human Services, Dallas, Tex., for defendant-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Appellant, Smith V. Ransom, brings this appeal under 42 U.S.C. § 405(g) to review the Secretary's decision to terminate his disability benefits. The issue on appeal is whether the district court erred in granting the Secretary's motion for summary judgment, thereby affirming the Administrative Law Judge's finding that Ransom was no longer disabled and therefore, no longer entitled to disability insurance benefits. We hold that the ALJ's findings are supported by substantial evidence; thus, the district court did not err in granting summary judgment. We affirm.

*Substantive Law*

Except in cases in which a finding has been made that an individual's disability is permanent, the Secretary is directed to review, at least once every three years, any case where an individual has been deter-

mined to be under a disability. 42 U.S.C. § 421(h). The scope of such a review is to determine whether the individual remains disabled. "Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A). The Secretary must undertake a specific sequential process in order to render a finding regarding disability. 20 C.F.R. § 404.-1520. First, if a claimant is presently involved in substantial gainful activity, the inquiry ceases and the claimant is declared not disabled. 20 C.F.R. § 404.1520(b). If the claimant's disability is determined to be non-severe, he is not considered disabled. 20 C.F.R. § 404.1520(c). If an individual's impairment meets the durational requirement of at least twelve months, 42 U.S.C. § 423(d)(1)(A), and is listed in appendix 1 of the regulations, 20 C.F.R. § 404, app. 1, or is determined to be the medical equivalent of a listed impairment, the claimant is considered disabled *per se*, without additional inquiry. 20 C.F.R. § 404.1520(d). If such a determination cannot be made, the Secretary must then evaluate the claimant's residual functional capacity.[1] The Secretary must evaluate the physical and mental demands of the claimant's past relevant work and if the claimant can meet these demands, there must be a finding of no disability. 20 C.F.R. § 404.1520(e). If, however, the claimant cannot perform past relevant work, then it must be determined whether the claimant is capable of performing other kinds of substantial gainful activity.[2] If so, there is no disability; if not, the claimant is considered disabled. 20 C.F.R. § 404.1520(f).

*Facts*

Appellant filed an application for Social Security benefits on February 4, 1976, and for Supplemental Security Income on June 20, 1976, claiming he was disabled due to a herniated nucleus pulposus at L4–5 and radiculitis of the L5 nerve root on the right. Appellant was awarded a period of disability beginning June 14, 1975 and received his disability insurance benefit checks for the next five years.

On April 6, 1981, the Secretary notified appellant that current information would be required in order to determine if his condition was still disabling. At the request of the Secretary, appellant was examined by Dr. Ernest Brownlee, a psychiatrist under contract with the Department of Health and Human Services to perform such examinations.[3] Dr. Brownlee submitted a medical report in which he diagnosed appellant as having a dysthymiac disorder, a schizoid personality disorder, some histrionic features, and a large hernia. He stated that appellant's histrionic features probably indicate his desire to accentuate his dependency on disability payments.

Appellant's evidence was then reviewed by Dr. David Blacklock, a state agency medical consultant. Dr. Blacklock determined that, based on this evidence, appellant was capable in a normal eight-hour workday of sitting, standing and walking for eight hours, lifting and carrying ten pounds frequently and twenty pounds occasionally, using his hands, fingers and feet for repetitive motions and occasionally bending, kneeling, crawling, crouching, climbing and balancing. It was his opinion that appellant's schizoid personality with histrionic features was not vocationally relevant. It was also his opinion that the severity of appellant's condition does not

---

1. Residual functional capacity is defined as what a claimant can still do despite his limitations. Residual functional capacity may be determined solely upon medical findings; however, if these findings are insufficient for an adequate assessment, other factors may be considered. 20 C.F.R. § 404.1545(a).

2. The Secretary must at this stage examine the claimant's age, education and work experience in addition to his functional level. 20 C.F.R. § 404.1520(c).

3. Dr. Brownlee is a specialist in psychiatry and a staff physician at Timberlawn Psychiatric Hospital, Dallas, Texas.

meet or equal that of any impairment described by the Listing of Impairments.

Appellant was informed on June 15, 1981 that the Secretary had determined that his disability had ceased as of May 1981, and that his benefits would terminate as of July 1981. A *de novo* hearing before an administrative law judge was requested. The hearing was noticed on August 5, 1981 and held on November 24, 1981 before Administrative Law Judge Saul Brandes. Appellant was the sole witness at the hearing. At the close of the continuance hearing, the ALJ requested that appellant's representative submit additional evidence in the form of an update from his physician and a report from Dr. R.M. Flasdick, an internist, who had examined appellant the prior September.

On November 30, 1981, Dr. Flasdick submitted his medical report. According to Dr. Flasdick, the September examination revealed tenderness of the paraspinous muscles and abdominal tenderness. He then referred appellant to Dr. A.P. Larson, an orthopedist, who diagnosed appellant as having myostitis of the cervical spine, right arm, lumbar spine and buttocks, which were treated with physical therapy and injections of Hydeltrasol. Dr. Flasdick wrote that appellant did not have any significant medical disease and that most of his symptoms were orthopedic and/or psychosomatic in nature.

Appellant's representative submitted an interrogatory to Dr. Brownlee asking whether, in his opinion, appellant's impairments equalled the level of severity of the Listings of Impairments. Dr. Brownlee completed and returned this interrogatory on December 17, 1981, replying that the appellant's condition equalled the listings of section 1.05(C)(1) and (2).[4] However, Dr. Brownlee qualified this opinion by stating that he was unsure whether appellant's symptoms were outright malingering or whether true hysterical conversion was present.

The ALJ issued his formal opinion on February 8, 1982, finding that appellant's disability had ceased at the close of May 1981. Appellant thereafter sought review of the recommended decision before the Appeals Council. After considering all the evidence of record, the ALJ's reasoning and evaluation, the applicable law and regulations, and appellant's arguments in support of his claim, the Appeals Council denied the request for review, at which time the ALJ's decision became the final determination of the Secretary.

Appellant then filed a complaint against the Secretary of Health and Human Resources in the United States District Court for the Northern District of Texas. After the filing of cross motions for summary judgment, the district court granted the Secretary's motion, concluding that the Secretary's decision was supported by substantial evidence. It is from this judgment that Ransom appeals.

*Standard of Review*

In reviewing termination decisions of the Secretary, we are limited to determining whether the Secretary's finding of improvement to the point of no disability is supported by substantial evidence. *Accord Olson v. Schweiker,* 663 F.2d 593, 595 (5th Cir.1981). We may not reweigh the evidence or substitute our judgment for that of the Secretary. *Johnson v. Harris,* 612 F.2d 993, 997 (5th Cir.1980). We are not excused, however, from our responsibility to scrutinize the record in its entirety to determine whether substantial evidence does indeed support the Secretary's findings. *Smith v. Schweiker,* 646 F.2d 1075, 1076–77 (5th Cir.1981).

■ As in initial disability determination cases, the burden of proof is on the claimant to show the existence of disability. *Crosby*

---

4. 1.05 *Disorders of the spine:*
 \* \* \* \* \* \*

 C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

*v. Schweiker,* 650 F.2d 777 (5th Cir.1981). Once this is established, the burden shifts to the Secretary to show that there is other substantial gainful employment that the claimant is capable of performing. *Millet v. Schweiker,* 662 F.2d 1199, 1201 (5th Cir. 1981).

*Arguments on Appeal*

Appellant raises three issues on appeal: (1) whether the decision of the Secretary lacks support of substantial evidence due to exclusive reliance upon a medical review physician; (2) whether substantial evidence of medical improvement is present; and (3) whether the ALJ violated established law in drawing medical expert conclusions.

 Appellant first complains of that part of the ALJ's decision which determines, contrary to Dr. Brownlee's view, that appellant's impairments are not medically equivalent to the listed impairments. In his decision, the ALJ wrote:

> Under sections 404.1526 and 416.926, a claimant may be found to be disabled per se if his impairments are medically equivalent to a listed impairment of Appendix 1. Dr. Brownlee answered an interrogatory indicating that in his opinion the sum total of the claimant's impairments equal the level of severity of the listed impairments. However, the undersigned accepts the opinion of Dr. Blacklock, a State Agency physician, that the claimant's impairments are not medically equivalent to the listed impairments.

Appellant argues that the opinion of a non-examining and non-testifying physician cannot be relied upon as the sole basis for denial of disability insurance claims. Although the report is admissible as evidence at the hearing, appellant's argument continues, it cannot be the substantial evidence

needed to support a finding. Appellant cites two recent decisions of this circuit in support of this principle. *Johnson v. Harris,* 612 F.2d 993 (5th Cir.1980); *Strickland v. Harris,* 615 F.2d 1103 (5th Cir.1980).

Neither *Johnson* nor *Strickland* is apposite to the instant case. In *Johnson,* the *only* medical evidence presented was by physicians the claimant maintained had never examined him. This court held that, if claimant's assertions were true, these reports alone would not be substantial evidence on which to base an administrative decision. In *Strickland,* the non-examining medical review physician made specific medical conclusions in direct contradiction to those of examining physicians. There, this court held that little evidentiary weight is to be accorded to the reports of a non-examining physician who "ventures a conclusion based on a report by an examining psychiatric expert that the latter declined to make and that is not supported by the latter's observations or findings." 615 F.2d at 1110.

It is important to note that neither of these cases dealt with an equivalency determination. Unlike a medical opinion concerning a particular ailment of a particular individual, in appropriate cases an accurate equivalency determination can be reached on the record alone, without a personal examination.[5] We hold that this was such a case. The equivalency determination here focuses upon § 1.05(C) of the Listing of Impairments. That section requires that the patient have, among other things, *significant* limitation of motion of the spine and *significant* motor loss. Dr. Brownlee's report, from which Dr. Blacklock made his equivalency determination, contains detailed descriptions of the results of appellant's examination.[6] The detail of this re-

---

**5.** We do not decide whether an equivalency determination can be made without a personal examination in every case. We merely hold that, on the specific facts of this case, such a determination was appropriate.

**6.** Sensory examination was intact to all modalities on the left. However, on the right, there was a decrease in all modalities, vibratory, pinprick, cold, and position sense. This was noted from the head to the toe, with a marked mid-

line change. The patient's gait was within normal limits. He had normal base and station. He had no difficulty with heel walking, toe walking, or tandem walking. The patient could stand on his right leg without any discomfort, and he could stand on his left leg without any discomfort. Romberg's sign was negative. When the patient had formal straight leg raising testing, he had exquisite pain beginning at approximately 10°. This was on both right and left. With the bent knee examination, he could

port allowed Dr. Blacklock to determine that the appellant's limitation of spinal motion and motor loss were not significant, and thus to make a reasoned equivalency determination, without the need for a personal examination.[7] Therefore, we hold that Dr. Blacklock's opinion concerning the equivalency of appellant's impairments *may* serve as substantial evidence to support the ALJ's finding.[8]

■ Appellant next argues that there is not substantial evidence to support a finding of medical improvement. However, an examination of the record in this case firmly supports the Secretary's determination. Appellant was found to be entitled to a period of disability commencing on June 14, 1975, because of a herniated nucleus pulposus at L4–5 and radiculitis of the L5 nerve root on the right. The medical evidence reflects, however, that by May 1981, appellant's condition had improved considerably. Dr. Brownlee's report contained detailed descriptions of appellant's present condition, from which Dr. Blacklock and the ALJ were able to note improvement in appellant's condition. Dr. Flasdick noted on November 30, 1981, that x-rays of the appellant's chest, cervical spine and lumbar spine, and upper gastrointestinal series revealed no significant abnormalities.[9] Moreover, Dr. Brownlee, in response to appellant's interrogatory, posited that in his opinion appellant's perceived illness is the result of hysterical conversion syndrome or malingering. Therefore, we hold that the record in this case does contain substantial medical evidence to support the Secretary's conclusion.

Finally, appellant argues that the ALJ has drawn expert medical conclusions of his own in violation of the principle annunciated in *Spencer v. Schweiker,* 678 F.2d 42 (5th Cir.1982) (ALJ may not assume role of medical advisor). We find this argument without merit. We note that each of the ALJ's findings is based on expert opinions of qualified physicians and we do not find that the ALJ has exceeded his authority in drawing conclusions from these findings.

The judgment of the district court is AFFIRMED.

---

tolerate to about 90° on right and left, and then had extreme pain. When sitting, the patient had minimal pain from the sitting position to 45°. He did have some tightness in his back in that encounter. The patient was asked to bend forward, and he did so to approximately 15° to 20°, and claimed to have severe pain in his back. The patient was noted to have extreme tightness in his lumbar region in the area of the surgical incision, which was well healed.

X-ray examination revealed the laminectomy at the level of L4 and L5 on the right. The patient was noted to have a decreased disk space at L4–L5. There was no instability or curvature of the spine noted, and there was no lilting noted.
2 Record on appeal, at 173.

7. Dr. Blacklock's determination reads in relevant part:

The evidence in file shows that the beneficiary had back surgery in early 1976. Current medical evidence revealed that this surgery was relatively successful and he shows no difficulty with heel walking, toe walking, nor tandem walking; nor is he noted to have a foot drop. The beneficiary does have some limitation of motion of his back and some loss of sensation on the right side of his body.

His reflexes are noted to be normal in his upper extremities and in his left leg; his right leg shows absent ankle jerk, but normal knee jerk reflex. The beneficiary is noted to have a histrionic personality disorder, which is not established as being vocationally relevant. He also has a large hernia which would preclude his performance of heavy lifting. The evidence in file thus indicates that the severity of the beneficiary's condition does not meet or equal that of any impairment described by the Listing of Impairments and that he retains the functional capacity for the performance of light physical exertion as described by the Assessment of Residual Functional Capacity in file.
2 Record on appeal, at 168.

8. Therefore, there is no validity to appellant's claim that the ALJ erred in rejecting Dr. Brownlee's determination in favor of Dr. Blacklock's. Conflicts in the evidence, if present, including medical opinions, are to be resolved by the Secretary, not the courts. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Scharlow v. Schweiker,* 655 F.2d 645 (5th Cir.1981).

9. 2 Record on appeal, at 186–87.