803 F.2d 718
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SHIRLEY ALLEN, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1786.
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1986.
 
 Before: KEITH and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Shirley M. Allen appeals from an order of the district court granting the Secretary's motion for summary judgment in Allen's action pursuant to 42 U.S.C. Sec. 405(g) challenging the Secretary's decision that she is not disabled, and, therefore, not entitled to an award of social security disability benefits. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 On March 1, 1983, Shirley M. Allen filed an application for social security disability benefits alleging as disability "back and leg injury due to fall." Allen was born on October 25, 1937, and, therefore, was 45 years old at the time of application. The application also revealed that Allen had not been employed in the previous twenty-four months. On June 7, 1983, the Secretary denied the claim, finding that claimant could stand, walk, lift and carry without problem, and suffered no muscle spasms or limitations of motion. Allen requested reconsideration and, on August 3, 1983, Allen's request was denied, in part because of her failure to appear for a scheduled consultative examination. The disability report completed by Allen indicates that she fell on an icy sidewalk outside her apartment building rupturing a disc in her back. Allen alleged that she cannot stand very long, and that her left hip gives out on her, causing her to fall. Claimant alleged that the left leg goes numb and she is in constant pain. Allen indicated that she does her own cooking, cleaning, and shopping, but visits very little because riding in a car irritates her back. Allen stopped working on October 23, 1981.
 
 
 3
 Allen's vocational report indicated that she had worked in either housekeeping or kitchen work from 1970 to October 1981. From September 28, 1977 until October 23, 1981, Allen worked at a hotel as a housekeeper which involved cleaning rooms and eight hours of standing, eight hours of walking, constant bending and reaching, and carrying of sheets and bedspreads. Allen's previous jobs required similar exertional requirements. In her reconsideration disability report, Allen stated that her doctor told her not to do anymore sweeping or vacuuming. Allen alleged that she cannot do her own hair and that her pain is too great to do her housework.
 
 
 4
 A report by Frederick J. Hamilton, D.O., an examining physician, dated January 8, 1981, indicated that Allen only occasionally noticed left leg pain. Hamilton's impression was "[m]ild long standing degenerative disc disease lumbar spine possibly with a super imposed mild lumbar strain." Hamilton concluded that "[c]ertainly consideration of spinal surgery or a lumbar myelography is not indicated," but "[s]he should avoid activities which aggravate the low lumbar spine."[1]
 
 
 5
 On June 8, 1981, Edward F. Martin, D.O., reported "degenerative disease at the lumbosacral level which I believe is congenital in nature and secondary to a Grade I spondeylolisthesis of L5 on Sl." Martin noted "marked degenerative disease at the lumbosacral level with virtual absence of that joint space," but that "[t]he sacroiliac and hip joints appear normal. No significant leg length difference is present nor is there any scoliosis of the lumbar spine."
 
 
 6
 On July 7, 1981, Hamilton reported that there had been no change in Allen's condition since his January report. On February 17, 1983, Gary Roat, D.O., found a normal EMG of the left lower extremity.
 
 
 7
 The most complete report in the record is that of M. Conroy, M.D., dated May 18, 1983. Conroy observed that Allen walked "without a limp, sits, stands and moves around easily, gets on and off the table easily, turns on the table easily, goes from recumbent to sitting easily." Conroy reported that "[e]xamination of the knee and hip ultimately revealed full range of motion in all directions in all possible planes." In reviewing previous x-rays, Conroy concluded that such "show spondylolisthesis, not quite Grade II but in my opinion greater than Grade I with sacrum tending towards the horizontal type. The disc space at the level of the spondylolisthesis is almost obliterated." Further, "[t]here is a defect on at least one view of a pars interarticularis and although laminography probably would be needed to be absolutely certain, I believe she has bilateral defects." Conroy noted:
 
 
 8
 During her examination there were gross inconsistancies and even from moment to moment contradictions in what she did in response to various tests. I certainly was not able to establish any atrophy or nerve root irritation or determatome pattern or any neurological evidence of slipped disc or nerve root impingement.
 
 
 9
 The history and physical examination in my judgment were sub optimal as far as determining precise degree of functional impairment, but all things considered including the x-rays I believe that she could not return to her job as a maid.
 
 
 10
 Spondylolisthesis is a serious problem which is not easily solved and I believe that if vocation rehabilitation were possible it would have to be to a very sedentary type of job with no lifting or bending and the ability to get up and walk from time to time to avoid excessive sitting.
 
 
 11
 Conroy found that Allen had fifteen percent flexion in all directions, but noted that this figure was "not necessarily due to limitation of motion. All pt. willing to do at this time."
 
 
 12
 Allen was seen on February 1, 1983 and June 22, 1983 by E. Schrader, D.O., who diagnosed "degenerative disc disease, acute myositis with leg strain."
 
 
 13
 A hearing before an administrative law judge was held on January 17, 1984, at which claimant testified that she drove the ten miles to the hearing without stopping, and that she attended high school through the tenth grade. Allen testified that she left work because the pain was too great. The heaviest object she was required to lift was a 12-pound vacuum. Allen testified that in July 1983 she went camping, but did not work in the garden or mow the yard. Allen indicated that she has no problem feeding, bathing or dressing herself or preparing meals, and dusts and does dishes and laundry. Allen does not vacuum or make beds. Allen takes two or three showers per day to relieve her pain. Allen can drive up to twenty-five or thirty miles, after which time she has to stand. Allen drives two or three times each week, and can only sit for thirty minutes because her hip becomes numb. Allen can stand for twenty to thirty minutes at a time, and can lie down for two to three hours. Allen testified that she cannot reach because it pulls the muscles in her ribs, and cannot bend at all. Allen estimated that she could carry fifteen to twenty pounds. During camping in the summer of 1983, Allen fished from a boat and had no problems. Allen goes to the grocery store twice a week. Allen receives physical therapy when she can afford it, but does exercises prescribed for her and uses a heat lamp of her own. Allen had worn a back brace, but it was stolen.
 
 
 14
 Allen testified that she could not return to her job as a maid, and that she could not do a sedentary job because of back pain. Allen testified that she often rests while preparing meals or doing the dishes.
 
 
 15
 On January 31, 1984, the ALJ denied benefits. The ALJ observed that "Ms. Allen was neither a very candid nor cooperative witness," citing ambiguous answers Allen gave to specific questions. The ALJ found that Allen's contention that she cannot bend is not substantiated by the medical evidence. The ALJ concluded:
 
 
 16
 Ms. Allen's demeanor at the hearing did not substantiate her allegations of constant, severe, disabling pain and other disabling impairments. She sat through a hearing that lasted for 55 minutes without feeling the need to stand, other than to take the oath and leave the hearing room. She made no unusual movements in the witness chair. Her movements on arising to take the oath were slower than when she changed witness chairs, and she pushed off a little. Her upper limb movements were normal. She used her right hand in a grossly normal manner when she scratched her nose and later when she adjusted her glasses. She exhibited no signs of distress other than carrying a cane. Claimant's mental awareness was above average, her intelligence was above average, her communicative skills were average or better, and her personality was slightly introverted. Upon leaving the hearing room claimant arose, picked up a large purse and a large leather portfolio case, slowly zippered her coat, and exited with a normal gait and at an average speed. Although she carried a cane, it was readily apparent that she did not need it. When moving from one witness chair to another during the early stages of the hearing claimant did so by picking up the large purse and leather folio case, taking two steps toward the second chair, and then retrieving her cane, almost as an afterthought.
 
 
 17
 The ALJ found that Allen had a severe impairment but that she did not have a listed impairment. Relying on Conroy's report, the ALJ found that Allen could do sedentary work, and, applying Rule 201.18 of the grid, concluded that Allen was not disabled. The ALJ found that the medical evidence did not support Allen's claims of pain. On June 18, 1984, the Appeals Council denied Allen's request for review.
 
 
 18
 Allen filed a complaint in U.S. District Court seeking a review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) and the parties filed motions for summary judgment. On June 28, 1985, the magistrate recommended that the ALJ correctly found that Allen did not have a listed impairment, but recommended reversal, citing Wages v. Secretary, 755 F.2d 495 (6th Cir. 1985), because "it is clear that plaintiff's documented back problems prevent her from performing a full range of sedentary activities without at least some sit/stand and possibly other resting options." The magistrate recommended granting plaintiff's motion for summary judgment, writing:
 
 
 19
 Since under Kirk and Wages the Secretary cannot rely upon the medical-vocational guidelines, the Secretary has failed in this burden. It should be noted that the ALJ took no vocational testimony at the hearing and, thus, made no effort to make a traditional finding on the issue of residual functional capacity.
 
 
 20
 On July 31, 1985, the district court rejected the magistrate's recommendation, and denied Allen's motion for summary judgment and granted the Secretary's motion. The court found that the conclusion that Allen could do sedentary work was supported by "the medical evidence, including Dr. Conroy's report which sheds doubt as to the credibility of plaintiff's complaints, along with the ALJ's credibility determination and plaintiff's own testimony concerning her ability to travel and sit up to an hour."
 
 II.
 
 21
 Our review is limited to whether the Secretary's finding of no disability is supported by substantial evidence on the record as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Accordingly, even if we find that the evidence of record preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).
 
 
 22
 In social security disability cases, the ultimate burden of proof is upon the claimant to show that his disability precludes him from engaging in any substantial gainful activity. Hephner v. Mathews, 574 F.2d at 361. The claimant establishes a prima facie case by proving that the impairment prevents him from engaging in past relevant work. Id. Once a prima facie case is established, the burden of production shifts to the Secretary to show that the claimant has the residual capacity for substantial, gainful work in the national economy. Id. at 362. Although a treating physician's medical opinion should be given greater weight than the opinion of a physician who has seen the claimant only once, id., a statement by a treating physician that the claimant is "disabled" or "totally disabled" is not binding on the Secretary. 20 C.F.R. Sec. 404.1527. We also note that the ALJ is not required to fully credit a claimant's subjective complaints of pain if there is not an underlying medical basis for it. 20 C.F.R. Sec. 404.1529.
 
 A.
 
 23
 At the outset, the claimant contends that she meets the criteria for Appendix 1 disability as set forth in 20 C.F.R. Sec. 404, Subpart P, Appendix 1, Sec. 1.05(C). Section 1.05(C) mandates a finding of disability upon a showing of the following factors:
 
 1.05 Disorders of the Spine
 
 24
 ...
 
 
 25
 C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 26
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 27
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 28
 (emphasis added). Section 1.05(C) speaks several times in the conjunctive rather than the disjunctive. Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Even assuming that claimant's condition can be termed a "vertebrogenic disorder," there is no evidence of muscle spasm in the record nor evidence that limitation of motion in the spine or motor loss was significant. Ransom v. Heckler, 715 F.2d 989, 993 (5th Cir. 1983). The tests of claimant's condition by Dr. Conroy are called into question by Allen's marked lack of cooperation. Accordingly, the Secretary's conclusion that Allen did not suffer from a listed impairment is supported by substantial evidence.
 
 B.
 
 29
 Because the ALJ found, and the record supports, the conclusion that claimant could not perform her prior work, the burden falls on the Secretary to establish that jobs exist in the economy which claimant can perform. At issue is whether in applying the grid, the ALJ erred in concluding that claimant could perform sedentary work.[2] 20 C.F.R. Sec. 404.1567(a) provides:
 
 
 30
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 31
 Claimant testified that she could carry fifteen to twenty pounds, but that she could only sit for about thirty minutes. Claimant's principal contention is that she is ineligible for many sedentary jobs because of the fact that her physical condition requires her to stand at regular intervals.
 
 
 32
 In Wages v. Secretary of Health and Human Services, 755 F.2d 495, 498 (6th Cir. 1985), we held that "[t]he concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." Accordingly, when a claimant "must be allowed to alternate between sitting and standing for her comfort," reliance on the grid is erroneous.
 
 
 33
 Dr. Conroy's report indicated that claimant could work at a job where she has "the ability to get up and walk from time to time to avoid excessive sitting." No evidence in the record controverts this finding. Claimant's testimony was that she can only sit for limited periods of time, whether stationary or in a car, without standing to relieve the pain. The ALJ based his conclusion that claimant's allegations of pain were not credible principally on claimant's demeanor at the hearing. We, of course, have rejected the "sit and squirm" test as a sole gauge of the credibility of a claimant's complaints of pain. Weaver v. Secretary of Health and Human Services, 722 F.2d 310, 312 (6th Cir. 1983). Further, in this case, there is no evidence in the record which detracts from the credibility of claimant's claims. Conroy recognized that there would be limits on claimant's ability to sit for long periods, claimant testified that she was required to stand about every thirty minutes during her daily activities, and other courts have recognized that pain is associated with excessive sitting and claimant's condition. Carpenter v. Heckler, 733 F.2d 591, 593 (8th Cir. 1984). Accordingly, the ALJ erred in rigidly applying the grid, and, on remand, the Secretary should determine what, if any, jobs are available for a person with claimant's restrictions, by consulting a vocational expert if necessary.
 
 
 34
 Accordingly, the judgment of the district court is REVERSED and the case REMANDED to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 More fully, Hamilton reported:
 She stands 5'1' tall and weighs 119 lbs. She is seen to ambulate gracefully and without evidence of an antalgic gait. Sciatic signs today are bilaterally negative as are the femoral stretch signs. Neurologic status to both lower extremities is within normal limits. The knee jerks are 3+ and equal bilaterally. The ankler jerks are 2+ and equal bilaterally. The extensor hallicus longus strength is equal and normal bilaterally. There are good peripheral pulses to both lower extremities. There is no evidence of any muscle wasting or weakness to either lowere extremity. There is some mild tenderness to the lumbar spine with percussion. Lumbar spine range of motion however is felt to be relatively normal.
 [X]-ray examination of the lumbar spine and pelvis was obtained today. The x-ray does reveal a congenital developmental spondylolythesis (Grade I) and there is also noticed a collapse of the lumbosacral disc space height and some mild degenerative disc changes within the low lumbar spine.
 
 
 [2]
 If the ALJ correctly concluded that claimant can perform sedentary work, then it is uncontested that Vocational Rule 201.18 directs a finding of not disabled in the absence of non-exertional impairments