**Richard E. NEHLIG**

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION.**[1]

No. 9:96–CV–248.

United States District Court, E.D. Texas, Lufkin Division.

March 10, 1999.

effective March 1, 1997. Pursuant to the last sentence of 405(g) of the Social Security Act, no further action need be taken. 42 U.S.C § 405(g) ("... any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

Jennifer Louise Fry, Morgan & Weisbrod, Dallas, TX, for Richard E. Nehlig, plaintiff.

Steven MacArthur Mason, Asst U.S. Attorney, U.S. Attorney's Office, Tyler, TX, for Commissioner of Social Security, Shirley S. Chater, defendant.

### ORDER

HANNAH, District Judge.

CAME ON FOR CONSIDERATION the above-styled and numbered civil action, the court having heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge at Beaumont, Texas, for proper consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** It is therefore

**ORDERED** and **ADJUDGED** that this case is **REMANDED** to the defendant Commissioner for consideration of new evidence.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Richard E. Nehlig brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security Administration's ("Commissioner") decision denying disability insurance benefits. Plaintiff claims disability based on heart ailments, arthritis, and lower back pain, hypertension and poor vision. He now contests the Commissioner's decision by asserting that the Administrative Law Judge ("ALJ") erred in finding that he was not disabled.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. See 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judges. Jurisdiction is invoked pursuant to 42 U.S.C. § 405(g).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his application for disability benefits on July 31, 1991, alleging disability since March 28, 1991 due to chest pains, osteoarthritis of his hands and knuckles, and knee and back pain. (Tr. at 25–26.) The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before the Administrative Law Judge. (Tr. at 40, 41.) On October 4, 1994, a full hearing was conducted. Plaintiff appeared with his attorney and testified along with his treating physician, a medical expert appointed by the ALJ, and a vocational expert. The ALJ issued a decision on April 15, 1995. The ALJ found plaintiff was not disabled under the Social Security Act, and recommended denial of

his claim for social security benefits. (Tr. at 25–26.)

Plaintiff thereafter requested an Appeals Council review of the ALJ's decision. The Appeals Council denied Nehlig's request. (Tr. at 4–5.) Having exhausted all administrative remedies, plaintiff filed this appeal in federal district court.

## III. JUDICIAL REVIEW

The court's role is to determine whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992).

Substantial evidence is more than a scintilla, but less than a preponderance, *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992), it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983). The evidence must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 299–300, 59 S.Ct. 501, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, SOCIAL SECURITY CLAIMS AND PROCEDURES § 672, at 193 & n. 1 (4th ed.1991).

To determine whether substantial evidence exists to support the ALJ's findings, the entire record must be scrutinized carefully. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir.1983). The court in reviewing the record should not, however, proceed to reweigh the evidence or review the ALJ's decision *de novo*. *See Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir.1989); *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987). Rather, it is for the Commissioner to weigh the evidence and to resolve any conflicts. *See Anthony v. Sullivan*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co.*, 305 U.S. at 230, 59 S.Ct. at 217); *see also*, 42 U.S.C. § 405(g).

In determining whether substantial evidence supports the Commissioner's decision, four elements of proof are examined: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; and (4) claimant's educational background, age, and work history. *See Owens v. Heckler*, 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

## IV. ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

Social security claimants bear a formidable burden of proof, "so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir.1981). Proof of the existence of a serious disease or impairment alone does not establish a disability within the meaning of the Social Security Act. Thus, a showing of general disability is insufficient; a claimant must prove in addition inability to engage in any substantial gainful employment. *See Herridge v. Richardson*, 464 F.2d 198 (5th Cir.1972); *Ratliff v. Richardson*, 445 F.2d 440 (5th Cir.1971).

To qualify for disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act ("Act"). *See* 42 U.S.C. § 423(a). That is, the plaintiff must be under age 65, file an application for such benefits, and be under a disability as defined by the Act. *See* 42 U.S.C. §§ 416(I), 423(a). Those claiming

disability insurance benefits under the Act have the burden of showing the existence of a disability. *See Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir.1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Establishment of a disability is thus a dual process. First, the claimant must prove that he suffers from a medically determinable impairment. *See* 42 U.S.C. §§ 416(I)(1), 423(d)(1)(A). Second, the claimant must prove that his impairment or combination of impairments renders him unable to engage either in the work he previously performed or other substantial gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 416(I)(1), 423(d)(2).

## V. SEQUENTIAL EVALUATION PROCESS

The law requires, in every case, that the Commissioner determine whether the claimant has a disability. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The Commissioner developed a five-step sequential evaluation analysis to aid claimants in determining when they are disabled. *See* 20 C.F.R. § 404.1520. This procedure has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

First, the Commissioner ascertains whether the applicant is currently engaging in substantial gainful activity. If so, a finding of nondisability is entered and the inquiry ends. Second, the Commissioner determines if the applicant's impairment or combination of impairments is severe. That is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. If not, the inquiry ends and a finding of nondisability is entered. Third, does the severe impairment equal or exceed those in the Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1? If so, disability is presumed and benefits are awarded. Fourth, does the impairment prevent the individual from engaging in his regular previous employment? If so, a *prima facie* case of disability is established and the burden going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987). Fifth, is there other work in the national economy which the applicant can perform? If the Commissioner has the burden (via step 4) and establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986); 20 C.F.R. § 404.1520(a)–(f).

At the fifth step, the Commissioner engages in a two-pronged analysis: First, the Commissioner determines an appli-

cant's "residual functional capacity." That is, the Commissioner decides whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform activities generally required in various categories of work.[2] Next, the Commissioner consults the "Medical Vocational Guidelines," commonly called "the grids."[3] The grids are a matrix of general findings, established by rule, as to whether work exists in the national economy that a person can perform, taking into account age, education, work experience and residual functional capacity. When individual factors for a particular applicant are compared to the general findings in the grids, the Commissioner determines whether alternative work that the particular applicant can perform exists in the national economy.

If the grids produce a finding that substantial jobs are not available, the application for benefits is approved. If the grids produce a finding that such jobs are available, the application is denied. Use of the grids does not violate the Social Security Act, and is judicially approved as a fair and just method of determining disability. *See Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (concluding that the use of occupational Grids is not violative of the Social Security Act and stating that "[t]his type of general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing").

## VI. FACTUAL BACKGROUND AND MEDICAL HISTORY

### A. Age, Education, and Work Experience

The plaintiff was 62 years old at the time of the administrative hearing. He has a twelfth grade education. (Tr. at 60.) His work experience includes employment as a chemical plant operator and most recently as a security guard. (*Id.*) Plaintiff last worked in 1991.

### B. Medical Evidence

### 1. Examination by Consulting Physician

On two occasions, plaintiff was referred by the Texas Rehabilitation to Dr. Gurol M.D., a physician with the Willis Diagnostic Center in Willis, Texas, for a consultative exam. He was examined by Dr. Gurol in October 1991 and in February 1993. Dr. Gurol's examination of the plaintiff revealed "severe osteoarthritis of the dorsal spine." (Tr. at 306.) Also, Dr. Gurol observed "severe disc disease of the lumbar spine" and "bilateral deformities of the knees." (Tr. at 304, 307.) In his report on February 16, 1993, Dr. Gurol diagnosed plaintiff with hypertension and coronary artery disease complicated by angina. (Tr. at 304.)

### 2. Treating Physician Testimony

Dr. White M.D., a family physician practicing in Houston, has treated plaintiff since 1991. Dr. White testified at the administrative hearing that plaintiff suffered from subjective symptoms of chest pain, unstable angina, arthritic pain associated with his joints, hypertension, and, when exerted, plaintiff experienced severe shortness of breath. (Tr. at 46–52.)

Dr. White also testified that he had submitted a medical assessment form regarding plaintiff's ability to do physical work-related activities. Dr. White indicated that plaintiff can lift a maximum of 25 pounds occasionally and 10 pounds on a frequent basis, and can stand and walk a total of three to four hours during an eight hour workday. (*Id.*) Further, that plaintiff can only occasionally perform such activities as climbing and stooping and that plaintiff could climb ladders or stairs once

**2.** Residual functional capacity is defined as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). It has three components: physical abilities, mental abilities, and other impairments. *See* 20 C.F.R. § 404.1545(a).

**3.** *See* 20 C.F.R. Subpart P, Appendix 2 (1998).

daily but not on demand. (*Id.*) Dr. White stated that because of his diagnosed angina, if plaintiff were to exert himself beyond the above limits, he would get severe chest pains that would require him to lie down. (Tr. at 48.) Based on his angina and arthritis of his joints, particularly in his knee, Dr. White opined that plaintiff would be unable to perform a full eight-hour-workday. (Tr. at 52.)

### 3. Plaintiff's Subjective Testimony

Plaintiff testified that he cannot work because he experiences pain from arthritis in his hands, back, and knee, angina that causes pain in his chest even when not exerting himself, and poor vision.

Plaintiff testified, with regard to his daily activities, that he is able to occasionally drive his vehicle, take short walks around his property, prepare meals, wash dishes and vacuum around the house. (Tr. at 59.) He also stated that he is able to mow his small yard with a self propelled lawnmower. (Tr. at 60.) Mowing his lawn usually takes him 10–15 minutes to complete. (*Id.*) He reported that he can only walk 300 feet before he becomes "short-winded" and must sit and rest. (Tr. at 55.)

Plaintiff testified that he has frequent bouts of chest pain and that he takes nitroglycerin tablets "all the time." He stated that the onset of his chest pains is unpredictable. He sometimes gets chest pain when he is sitting down and that it takes two to five minutes after taking a nitroglycerine tablet for the pain to subside.

### 4. The Medical Advisor's Testimony

The ALJ secured a non-examining medical advisor ("MA"),[4] Dr. Remenchik, to testify at plaintiff's hearing. Dr. Remenchik reviewed the plaintiff's medical history and medical exhibits furnished to him prior to the hearing. He stated that he found little documented evidence of angina. (Tr. at 86.) The MA based this conclusion on a December 1991 stress test by the plaintiff that the MA interpreted as negative. (Tr. at 86.) However, the MA emphasized that he had neither taken a medical history nor had he examined the plaintiff and thus could not "make an intelligent judgment" as to whether plaintiff was suffering from angina. (*Id.*)

The MA testified that the plaintiff's hypertension was effectively treated with medication. Further, the MA stated that other than some decrease in plaintiff's ability to grip with his right hand, the medical records indicated normal motion in all other extremities and no significant anatomical deformities in the plaintiff's lower back. (Tr. at 72–83.)

The MA concluded that plaintiff had a residual functional capacity to perform light work with no limitations. (Tr. at 69–71.)

### 5. The Vocational Expert's Testimony

■ Carolyne Fisher, M.A., C.R.C., C.I.R.C., a certified rehabilitation and professional counselor, testified as a vocational expert ("VE").[5] Ms. Fisher qualified plaintiff's prior work experience as a chemical operator as medium to light work and plaintiff's most recent job as a security guard as semi-skilled and light work. The VE concluded that based on a residual functioning capacity to do light work, plaintiff could perform his past relevant

---

4. A medical advisor, at the request of the Social Security Administration is asked to review the claimant's medical records and then give an expert opinion as to the extent of claimant's impairment. *See* 20 C.F.R. § 1527.

5. Vocational Experts are utilized by the ALJ to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano,* 620 F.2d 691 (8th Cir.1980).

The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan,* 921 F.2d 816 (8th Cir. 1990).

work as a security guard as normally done in the United States economy.

During Ms. Fisher's testimony the ALJ posed a hypothetical question as to whether plaintiff could work as a security guard based on an ability to stand three to four hours, sit without limitation, walk at a normal pace, lift a maximum of 20 pounds occasionally and 10. pounds frequently, climb ladders adequately and climb one to two flights of stairs at a time. (Tr. 109–110.) The VE responded that a job as a security guard normally requires walking four to six hours a day but does not require climbing stairs or ladders. (*Id.*)

### 6. The Administrative Law Judge's Decision

After considering the evidence of record, the ALJ concluded that plaintiff was not disabled. Specifically, the ALJ's findings were:

Step 1: The claimant has not engaged in substantial gainful activity since March 28, 1991. (Finding 2, Tr. at 25.)

Step 2: The claimant has severe impairments of chest pains and hypertension. (Finding 3, Tr. at 25.)

Step 3: Claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Finding 4, Tr. at 25.)

Step 4: Claimant is able to perform his past relevant work as a security guard as normally done in the United States economy. (Finding 5, Tr. at 25.)

Step 5: Claimant has the residual functioning capacity to perform light work[6] without limitation. (Finding 6, Tr. at 26.)

In making these findings, the ALJ concluded that plaintiff's subjective complaints

of pain and functional limitations were not fully credible. Based on the sequential analysis, the ALJ determined that plaintiff was not disabled. (Tr. at 25, 26.)

## VII. PLAINTIFF'S POINTS OF ERROR & ARGUMENT

■ By local orders, this court's review is restricted to points of error and argument specifically raised and discussed in briefs submitted after the administrative transcript is filed. *See* ("Notice To Parties In Social Security Appeals and Order" and "Amended Order Directing Filing of Briefs.") In his brief, plaintiff argues: (1) that the ALJ's decision was not based on substantial evidence; and (2) that new medical evidence supports plaintiff's claim for disability and is proper grounds for remand. Plaintiff asserts that the ALJ's decision was not based on substantial evidence because the ALJ improperly gave great weight to the testimony of the medical expert. Further, plaintiff argues that new medical reports submitted by the consulting physician support a finding of disability.

As to the proposed new evidence, plaintiff states that the ALJ failed to request the consulting physician's opinion regarding plaintiff's ability to perform work-related activities. Specifically, plaintiff states that the ALJ had a regulatory duty to request a medical source statement from the consulting physician prior to the administrative hearing, but failed to make the request.

Plaintiff now proffers a medical source statement[7] acquired in October 1996, from the consulting physician.

---

6. Light work is defined as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds, Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing. 20 C.F.R. §§ 404.1567.

7. The elements of a complete consultative exam include a medical source statement about what claimant can still do despite their impairments. The statement should describe the opinion of the consultative physician about claimant's ability, despite his impairments to do work related activities. Such as sitting standing, walking, lifting, carrying, etc. *See* 20 C.F.R. § 404.1519n(c)(6).

## A. New Evidence

■ Social Security claimants usually have one opportunity to prove their disability. If this were not the case, the administrative proceedings would become an unending merry-go-round. Generally, evidence relating to post-hearing conditions is irrelevant in actions for judicial review. *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (new evidence showing that claimant developed a new impairment after administrative hearing not relevant to claimant's condition during period at issue).

■ Nonetheless, allowances are made in situations when a claimant's medical condition may not be fully comprehended at the time of the hearing. Thus, when new evidence becomes available after the ALJ's decision and there is a "reasonable probability that the new evidence would change the outcome" a remand is appropriate. *Ripley v. Chater*, 67 F.3d 552, 554 (5th Cir.1995).

■ To justify remand, 42 U.S.C. § 405(g) requires that the proffered evidence be: (1) new and not merely cumulative of what is already in the record, (2) material and likely to change the outcome of the case, and also that, (3) good cause be shown for a failure to present the evidence earlier. *See Pierre v. Sullivan*, 884 F.2d 799 (5th Cir.1989). These factors are addressed separately.

### 1. The Evidence is New and Not Cumulative

■ Evidence the plaintiff asks now to be considered consists of a medical source statement prepared by Dr. Gurol, the consulting physician. Dr. Gurol indicates plaintiff does not have the residual functional capacity to do light work. This assessment was prepared by the consulting physician following the administrative hearing at the request of the plaintiff. Dr. Gurol prepared the medical source statement based on his pre-administrative hearing examinations of plaintiff. As such, the evidence is certainly "new."

### 2. The New Evidence is Material

■ Materiality of new evidence involves a two-pronged inquiry: (1) whether the evidence related to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the ALJ's decision. *See Bradley v. Bowen*, 809 F.2d 1054 (5th Cir.1987).

The new evidence offered by plaintiff, namely an assessment of plaintiff's ability to perform physical work-related activities by Social Security's consulting physician, all relate to the period for which disability benefits are sought. As noted previously, Dr. Gurol prepared the medical source statement based on his prior examinations of plaintiff.

As to the second-prong, in finding that plaintiff was not disabled, the ALJ rejected plaintiff's subjective complaints of pain because the ALJ considered testimony from the plaintiff's treating physician, Dr. White, as lacking credibility. The ALJ reasoned that plaintiff's treating physician was "only a family practitioner" and his vocational opinions as to plaintiff's residual functional capacity "are not supportable." (Tr. at 23.)

The ALJ stated that he accorded great weight to the testimony of the Medical Advisor, presumably because of his expertise in making vocational assessments. Now, however, the new evidence, provided by a physician, selected by the ALJ and presumably an expert at preparing vocational assessments, and who, unlike the Medical Advisor, conducted an in-person examination of the plaintiff, substantiates or at the very least adds credibility to the treating physician's vocational opinion. Consideration of this new evidence may now provide an objective basis for a finding of disability. Therefore, the two-pronged test for materiality is satisfied and the new evidence is sufficient to merit remand.

### 3. Good Cause for Not Submitting the Evidence Earlier

A plaintiff must show good cause for a failure to incorporate the evidence into the administrative record. *See Pierre,* 884 F.2d 799 (5th Cir.1989). The consulting physician did not complete the medical source statement until after the administrative hearing was held. Here, the plaintiff could not have submitted the evidence in question because it did not exist at the time of the administrative hearing.

Regulations promulgated by the Social Security Administration provide that a complete report of a consultative examination should include a statement about what claimant can still do despite any impairments. *See* 20 C.F.R. § 404.1519n(c)(6). Further, regulations provide that if a consultative report is incomplete, Social Security will contact the consulting physician and request the missing information. *See* 20 C.F.R. § 404.1519p(b).

At the time of the administrative hearing, the consulting physician had not completed an assessment of claimant's physical abilities. Inasmuch as there is no indication in the transcript that the ALJ attempted to obtain such an assessment, as is required under Social Security's own regulations, good cause has been demonstrated.

Fundamental fairness dictates that this matter should be remanded to the Commissioner for a full review of this new evidence.

### B. Substantial Evidence

Under this recommended disposition, it is unnecessary to decide whether substantial evidence supports the ALJ's decision.

### VIII. RECOMMENDATION

The cause should be remanded for consideration of new evidence.

### IX. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.