Harvey **MURDAUGH**,
Plaintiff–Appellant,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH & HUMAN SERVICES OF the UNITED STATES, Defendant–Appellee.**

No. 150, Docket 87–6110.

United States Court of Appeals,
Second Circuit.

Argued Oct. 21, 1987.

Decided Jan. 21, 1988.

Michael Joseph J. Barnas, Brooklyn, N.Y., of counsel, for plaintiff-appellant.

Bruce H. Nims, Sp. Asst. U.S. Atty., for the Eastern District of New York, New York City (Robert L. Begleiter, Asst. U.S. Atty., Andrew J. Maloney, U.S. Atty., Eastern District of New York, New York City of counsel), for defendant-appellee.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal from an order of the United States District Court for the Eastern District of New York (Nickerson, J.), Harvey Murdaugh, a/k/a George Murdock, challenges a determination by the Secretary of the United States Department of Health and Human Services, which was affirmed by the district court, finding him capable of performing the full range of sedentary work and therefore not entitled to Supplemental Security Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c (1982 & Supp. III 1986). Because we conclude that claimant is "disabled" within the meaning of § 1382c(a)(3)(A) of the Social Security Act, we reverse the order of the district court and remand the matter to the Secretary for a calculation and award of benefits.

I  Claimant's Medical History

Appellant is a single, black male who in the course of being held up in August 1980 sustained a gunshot wound to his abdomen

and subsequently underwent surgery to control the internal bleeding and to correct bowel perforations. The bullet remains lodged in Murdaugh's lower spine. The following year claimant was injured when a car struck the taxi he was driving on the left front door. Although he was treated and released from the Baptist Medical Center emergency room on the day of the accident, he was admitted a week later, put into pelvic traction, and diagnosed as having an acute lumbosacral strain and a torn meniscus of the left knee. On August 22, 1981 the attending physician, Dr. Greenberg, concluded that Murdaugh had a "semi-partial permanent disability" and recommended conservative therapy.

On September 1, 1981 claimant made the first of several visits during a two-year period to Dr. Zwi Kahanowicz, an orthopedic specialist. Dr. Kahanowicz's final diagnosis was derangement of the lumbar spine, a left-side herniated disc, and a tear of the medial meniscus or interarticular fibrocartilage of the left knee joint. In March 1983 Dr. Kahanowicz noted that claimant was "totally disabled." In an evaluation of claimant's residual functional capacities dated July 28, 1985 the treating physician stated that in an eight-hour day claimant can sit two hours, stand two hours, walk two hours, and can lift and carry ten pounds. In a written report two days later, the doctor stated that claimant suffers a severe permanent disability.

Claimant consulted Dr. Charles Ogunro, a neurologist and psychiatrist, on September 24, 1981, regarding his headaches, nausea, and pain in his lower back and left knee. Dr. Ogunro found spinal hyperextension injury with cervical and lumbar sprain, tenderness and spasms in the back and tenderness and traumatic arthropathy of the left knee associated with diminished range of motion. He also diagnosed appellant as suffering from post-traumatic syndrome resulting in "significant and global limitation of intellectual affectual physical function."

After filing for disability benefits on March 28, 1983, claimant was examined in April 1983 by Dr. Ray Brown at the Secretary's request. Dr. Brown found full, free, and painless spinal motion and a full range of hip, knee, and ankle motion. In 1984 claimant was a patient at both the medical and orthopedic clinics of Kings County Hospital Center. His consulting physician there, Dr. S. Cohen, noted on January 4, 1984 that claimant was unable to do manual labor and should be given a "desk job." Dr. Cohen prescribed motrin for claimant's pain. Claimant also sought treatment in 1985 at New York Hospital Cornell Medical Center for low back pain and weakness and limited motion in the left leg and foot. His treatment consisted of motrin, dolobid, and "limbering" home exercises. Finally, complaining of pain behind the knee, claimant visited the Arthritis Clinic of the State University of New York Hospital's Downstate Medical Center in 1985.

At the request of his attorney, claimant saw Dr. Gerald Posner, a gastroenterologist, on July 16, 1985. His examination revealed right lumbo-sacral tenderness with a normal range of motion. Although claimant was able to get on and off the examination table and squat normally, Dr. Posner concluded that claimant's low back syndrome—a "most likely permanent" condition probably dating back to the gunshot wound—may cause difficulty in walking, lifting, and maintaining one position. Rating claimant's physical functional capacity, Dr. Posner found that in an eight-hour day, he could sit two hours, stand two hours, walk two hours, and lift and carry ten pounds for two hours, but could not do any bending.

Claimant also consulted with Dr. Mitchell Forman, an osteopathic physician, on July 18, 1985. Dr. Forman attributed claimant's chronic low back and leg pain primarily to his abnormal gait caused by his knee injury. He found that claimant could sit eight hours, stand and walk for one-half hour each, and could lift ten pounds from a sitting position for two hours. Dr. Forman opined that claimant "could work at a desk, sitting and using his upper extremities, but the ambulation involved in getting to work would be disabling to him."

Claimant has not returned to any of his usual occupations of driver, cook, stockman, and porter since his 1981 automobile accident. From March 1984 to April 1985, he worked for the New York City Department of Social Services as a condition of receiving welfare benefits, answering the telephone from 9:00 a.m. to 3:00 p.m. (with an hour's lunch) three days a week. He left that job after it began to require message deliveries which caused too much knee and leg pains.

Murdaugh claims that his knee injury, lower back spasms, and abdominal pain and nausea leave him in almost constant pain. It is undisputed that he takes well beyond the recommended dosage of analgesics prescribed to him, and his excessive usage more than likely is the cause of his nausea. The record further indicates that claimant, who is now 44 years old, rents a furnished room in a private home. His daily activities include watching television, reading the newspaper, and watering his landlady's garden. He occasionally visits friends at a car service where he was previously employed. Claimant left school during the ninth grade.

## II  Proceedings Below

Murdaugh's application for disability benefits was initially denied by an administrative law judge (ALJ) on February 19, 1984. The ALJ's decision of August 21, 1985—which is the subject of this appeal—resulted from an order of the district court that remanded claimant's case in light of *Dixon v. Heckler,* 589 F.Supp. 1494 (S.D.N.Y.1984), *aff'd,* 785 F.2d 1102 (2d Cir.1986), *vacated, Bowen v. Dixon,* —— U.S. ——, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987). On remand, the ALJ noted that the record before him establishes that claimant cannot perform his past relevant work. The hearing judge nonetheless recommended denial of claimant's request for benefits, finding Murdaugh's "allegations of disability ... unsupported by the medical evidence of record and ... inconsistent with the limited, conservative treatment he receives, the extent of his daily activities, his recent work activity, and his appearance and demeanor at the hearing."

The administrative judge gave "only minimal consideration" to the physical capacity assessments of Dr. Kahanowicz, claimant's treating physician, and to those of Drs. Posner and Forman because their assessments "are contrary to the overwhelming weight of the medical evidence." Instead, the ALJ found that appellant is able to sit for eight hours, stand and walk for two hours, and lift and carry ten pounds in an eight-hour work day. The hearing officer concluded that claimant's impairments were not so severe as to prevent him from engaging in the full range of sedentary work. The Appeals Council of the Social Security Administration adopted these findings and denied benefits. The district court affirmed. This appeal followed.

## III  Treating Physician Rule

█ In this Circuit the long-standing "treating physician rule" governs the consideration accorded the medical opinion of the claimant's treating physician relative to other medical evidence presented at a disability hearing. The "treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians...." *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986). That rule was misapplied in the instant case.

█ Dr. Kahanowicz, claimant's expert treating physician, concluded that claimant was permanently disabled and that he was capable of sitting, standing, and walking only two hours each. The ALJ gave "only minimal consideration" to Dr. Kahanowicz's assessment as well as to those of Drs. Posner and Forman. The hearing judge's refusal to accord Dr. Kahanowicz's opinion *extra* weight misapprehends the treating physician rule and substitutes an improper standard for evaluating the evidence of claimant's disability. Because the treating physician's opinion is

binding on the fact-finder unless there is substantial evidence to the contrary, we must review the record to determine whether it contains substantial evidence contradicting Dr. Kahanawicz's opinion that claimant is incapable of performing sedentary work. *See Hidalgo v. Bowen,* 822 F.2d 294, 297 (2d Cir.1987).

All of the doctors except Dr. Brown—the Department of Health and Human Service's consulting physician—found claimant disabled, differing only as to the extent of his disability. Both Dr. Kahanowicz's and Dr. Posner's assessments of claimant's physical functional capacity limiting Murdaugh's capacity to sit to two hours in an eight-hour workday hardly qualify him for sedentary work. *See* 20 C.F.R. § 416.967(a) (1987) (definition of sedentary work). Dr. Forman's somewhat more optimistic assessment nevertheless severely limits claimant's ability to stand and walk, tasks that sedentary jobs require. *See id.* In any event, Dr. Forman opined that the ambulation involved in any commute to work would be disabling to Murdaugh. Moreover, that appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table can scarcely be said to controvert the medical evidence. In short, a claimant need not be an invalid to be found disabled under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A).

### IV Conclusion

It is undisputed that claimant cannot perform his past relevant work, 20 C.F.R. § 416.920(e) (1987). Further, the treating physician's testimony established that claimant's limitation disabled him from performing a full range of sedentary work. *Id.* § 416.920(f). The medical evidence in this record viewed as a whole does not contain substantial evidence that would contradict this conclusion and support the Secretary's determination that claimant is capable of performing the full range of sedentary work. As a consequence, we reverse the order from which Murdaugh appeals. Because this matter has been previously remanded for a full hearing to the Secretary it is unnecessary to remand it again for another hearing in light of the binding-on-the-fact-finder treating physician testimony. The case is therefore remanded simply for the calculation and award of benefits.

Reversed and remanded for an award of disability benefits.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the "treating physician" rule was not followed by the administrative law judge here. Indeed, given the tortured history of this court's efforts to have this rule applied by administrative law judges of the Department of Health and Human Services in making disability determinations, *see Hidalgo v. Bowen,* 822 F.2d 294, 296–97 (2d Cir.1987), the statement by the administrative law judge here that he gave "only minimal consideration" to the assessment of the treating physician seems not merely wrong, but virtually cavalier.

I do not agree, however, that there was no substantial evidence to contradict the findings of the treating physician, which resulted from treatments which terminated more than two years before the administrative hearing under review. As summarized in Judge Nickerson's opinion below, Murdaugh worked six hours a day as a receptionist and telephone answerer from March, 1984 to March, 1985 as a condition of receipt of public assistance payments, and quit that job only because more strenuous work was demanded of him. Further, Judge Nickerson correctly found that "[t]he report of Dr. Brown and the notes of Dr. Cohen lend support to the conclusion that plaintiff could undertake sedentary work," and the majority's summary of the findings of Doctors Brown and Cohen does not challenge the district court's assessment. Finally, Dr. Forman's findings that Murdaugh "could work at a desk, sitting and using his upper extremities, but the ambulation involved in getting to work would be disabling to him," generally supports the conclusion that Murdaugh could

do sedentary work. The observation that he would be disabled by commuting to and from work is belied, however, by the fact that Murdaugh had commuted successfully to and from work for a full year shortly prior to his examination by Dr. Forman.

In sum, although I agree with the majority that the decision below must be reversed for failure to apply the "treating physician" rule, I disagree with its conclusion that the record "viewed as a whole does not contain substantial evidence" to contradict the treating physician's finding that Murdaugh cannot perform the full range of sedentary work. Proper application of the "treating physician" rule could sustain findings of either disability or no disability on this record. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987). I would therefore reverse and remand for further proceedings in accordance with the proper legal standard, rather than for the calculation and award of benefits.