Camille v. Colvin

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of June, two thousand sixteen.

PRESENT: AMALYA L. KEARSE,
         RALPH K. WINTER,
         DENNIS JACOBS,
                     Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
BRIAN MICHAEL CAMILLE,
         Plaintiff-Appellant,

         -v.-                                    15-2087

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,
         Defendant-Appellee.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:              JUSTIN GOLDSTEIN, Law Offices of
                            Kenneth Hiller PLLC, Amherst,
                            New York.

FOR APPELLEE:               SERGEI ADEN, Special Assistant
                            United States Attorney (Stephen
                            P. Conte, Regional Chief

Counsel, on the brief), Office of the General Counsel, Region II, Social Security Administration, New York, New York, for William J. Hochul, Jr., United States Attorney for the Western District of New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Brian Michael Camille appeals from the judgment of the United States District Court for the Western District of New York (Wolford, J.), dismissing Camille's complaint challenging the denial of disabled adult child's benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act").[1]  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

When considering a denial of disability benefits, we conduct a plenary review of the administrative record, and "focus on the administrative ruling rather than the district court's opinion."  Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Kohler v. Astrue, 546 F.3d 260, 264-65 (2d Cir. 2008)).  We must uphold the denial if "there is substantial evidence, considering the record as whole, to support the Commissioner's decision and if the correct legal standards have been applied."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)); see also 42 U.S.C. § 405(g). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  McIntyre v. Colvin, 758

---

[1] Camille alleged an onset date of November 1, 2009; to be eligible for disabled adult child's benefits he was required to show that his disability began before August 29, 2010, his 22nd birthday.  See 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350.

F.3d 146, 149 (2d Cir. 2014) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Camille challenges the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") finding as to Camille's mental limitations.  The ALJ found that Camille had the RFC "to perform medium work . . . except that he is limited to simple routine and repetitive tasks; he requires low stress work, defined as no production paced work, occasional changes to work setting, occasional use of judgment, and occasional decision making; he is limited to occasional and superficial interaction with coworkers and supervisors; he should have no interaction with the public; he should have no exposure to hazards; and he should have no more than frequent exposure to humidity, extremes in temperature, and wetness."  Certified Administrative R. ("R.") at 53.  He contends that this finding was not supported by substantial evidence, because the ALJ improperly weighed the medical opinion evidence, attributing "little weight" to the opinions of Camille's treating psychiatrist, Dr. Dawood, and "great weight" to the opinion of the State agency consulting psychologist, Dr. Kamin.  We disagree.

Pursuant to the "treating physician rule," Dr. Dawood's opinion "as to the nature and severity of [Camille's] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess, 537 F.3d at 128 (emphasis added) (quoting 20 C.F.R. § 404.1527[(c)](2)).  "[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citation omitted).  If a treating physician's opinion is not afforded controlling weight, the ALJ must consider certain factors to determine how much weight to give it, and should articulate "good reasons" for the weight given.  Id.; see also 20 C.F.R. § 404.1527(c)(2).

Substantial evidence supports the limited weight that the ALJ attributed Dr. Dawood's opinions, because they were in conflict with content in that doctor's own clinical

notes,[2] and in conflict with the opinion of Dr. Kamin. R. at 55-57. Furthermore, each of the check-box forms Dr. Dawood completed specifically requested narrative explanation of any opined limitations--particulars he declined to provide. See R. at 291, 376-77, 385-86. Additionally, the ALJ specifically noted that Camille's record of psychiatric treatment was "intermittent," including a six-month gap between his first and second appointments with Dr. Dawood. R. at 55, 57. These constitute "good reasons" for the limited weight attributed. Halloran, 362 F.3d at 32 (factors include, inter alia, frequency of examination; the evidence in support of the opinion; the consistency of the opinion with the record as a whole; other factors that tend to support or contradict the

_____

[2] This includes, e.g., Dr. Dawood's relatively consistent descriptions of Camille's intact cognitive and communicative skills, R. at 281, 284-85, 338, 341, 348, 360, 365, 367, 371, 379 (describing Camille as attentive, fully communicative, coherent, with logical thinking and intact memory/cognitive function); the recommendation that Camille participate in Vocational and Education Services for Individuals with Disabilities, R. at 278, 280, 389; see Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (ALJ's finding that claimant was capable of performing light work supported by reports of treating orthopedic specialist, which consistently stated that claimant "would be an excellent candidate for vocational rehabilitation"); and Camille's consistently moderate Global Assessment of Functioning ("GAF") scores, R. at 280, 283, 338, 341, 363, 366, 369, 371.

Camille concedes that GAF scores are "one factor to consider" in determining a claimant's RFC, but argues that the ALJ here erred because (1) she relied on them exclusively, and (2) Dr. Dawood did not assess Camille's GAF scores on days of "worsening or increased symptoms," although he identifies only one such day, in January 2012. Br. of Appellant at 54-55. The record does not indicate that the ALJ relied on Camille's GAF scores to the exclusion of other evidence; and Camille does not explain how a single day of allegedly increased symptoms in 2012 is material to Camille's burden to show disability that lasted or was expected to last for a continuous period of at least twelve months (beginning in November 2009). See 42 U.S.C. § 1382c(a)(3)(A).

4

opinion); see also 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). To the extent Camille argues that the ALJ was insufficiently explicit in articulating her rationale, we disagree. See Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'" (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam))).[3]

Camille argues that it is "improper to reject a treating physician's opinion solely based upon the treating physician's own treatment notes." Br. of Appellant at 32 (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). In Balsamo, the ALJ rejected the treating source's opinion notwithstanding the lack of a contrary medical opinion. We held that "[w]hile an ALJ is free . . . to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." 142 F.3d at 81 (brackets omitted) (quoting McBrayer v. Sec'y of HHS, 712 F.2d 795, 799 (2d Cir. 1983)). Here, there was such a contrary opinion. The ALJ was permitted to consider Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable. See Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); cf. Mongeur, 722 F.2d at 1039 ("[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence." (citation omitted)).

---

[3] Camille contends that the ALJ "failed to evaluate or weigh [Dr. Dawood's] opinion from October 12, 2011." Br. of Appellant at 48. While the ALJ's written decision did not specifically reference this document, "an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Brault v. SSA, Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotation marks and citation omitted).

We cannot say that the ALJ erred in the application of the regulatory factors to Dr. Kamin's opinion. Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed "great weight" to the opinion because she found it most consistent with the record as a whole, including: Dr. Dawood's treatment notes; treatment notes from Camille's social worker (Patrice Goodrich); Camille's daily activity reports; and Camille's credible testimony. Cichocki, 729 F.3d at 178 n.3; see also Halloran, 362 F.3d at 31–32 (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed" (internal quotation marks omitted)). Furthermore, Dr. Kamin is a specialist and an Agency consultant (an "expert[] in the evaluation of the medical issues in disability claims under the Act," SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)), and his check-box opinions were supplemented by narrative explanation. See 20 C.F.R. § 404.1527(c)(3)–(6).[4]

---

[4] Camille argues that Dr. Kamin's opinion is not substantial evidence because it is "stale." Dr. Kamin issued his opinion in November 2011; Camille was initially denied benefits in December 2011; and the ALJ hearing occurred September 2012. Between November 2011 and September 2012, Camille argues, additional treatment records (dated January 2012 to July 2012) and two of Dr. Dawood's opinions (dated June 2011 and August 2012) were submitted into evidence--so Dr. Kamin did not review these materials. Br. of Appellant at 32-37.

No case or regulation Camille cites imposes an unqualified rule that a medical opinion is superseded by additional material in the record, and in this case the additional evidence does not raise doubts as to the reliability of Dr. Kamin's opinion. Cf. Hidalgo v. Bowen, 822 F.2d 294, 295-96, 298 (2d Cir. 1987) (opinion based on incomplete medical record was undermined by its conflict with opinions of two treating physicians, which were supported by extensive X-ray evidence, hospital reports, and treatment notes over an 18-month period; and may have been altered by review of the additional medical records containing clinical findings confirming treating physicians' diagnosis), limited by regulation as stated in Schisler v. Sullivan, 3 F.3d 568 (2d Cir. 1993). While a bit more detailed, Dr. Dawood's June 2011 and August 2012 opinions do

For substantially the reasons discussed above, and those explained in the district court's opinion, the ALJ's RFC finding was supported by substantial evidence, including: Dr. Kamin's opinion; Dr. Dawood's treatment notes; the treatment notes of Ms. Goodrich; Camille's daily activity reports; and Camille's credible testimony.[5]

For the foregoing reasons, and finding no merit in Camille's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

not differ materially from the October 2011 opinion, which Dr. Kamin did review: all three opined that Camille had limitations related to concentration, persistence, social interaction, and adaption, and that he was unable to work. R. at 290-91, 376-78, 385-87.

[5] The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, inter alia, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others. Veino v. Barnhart, 312 F.3d 578, 588-89 (2d Cir. 2002); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

7